IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| STANLEY JOHN KIPPEN,<br><br>    Plaintiff,<br><br>vs.<br><br>STEVEN PACK, PRESIDENT OF ALLIED MATERIALS & EQUIPMENT CO., INC.,<br><br>    Defendant. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT<br><br><br><br>Case No. 1:10-CV-119 TS |

    This matter comes before the Court on Motions for Summary Judgment filed by Defendants Steven Pack ("Pack") and Allied Materials & Equipment Company, Inc ("Allied").[1] For the reasons discussed below, the Court will grant Defendants' Motions for Summary Judgment as to Plaintiff's infringement claim. In addition, the Court will grant Defendants summary judgment on Plaintiff's unpled contract-based claims.

---

    [1]Docket Nos. 76 & 88. The Court ordered Allied be joined as a party on November 16, 2011. *See* Docket No. 84.

I.  STATEMENT OF FACTS

Plaintiff Stanley John Kippen is the inventor of a toy glider.  Plaintiff was issued Patent Number 5,078,639 (the "'639 Patent") on January 7, 1992.[2]  Plaintiff formed Wingers Co., a partnership with Plaintiff as President and Corey Little as Vice President.[3]

On October 13, 1992, Plaintiff sent a letter to Defendant Steven Pack introducing the toy glider.[4]  Pack is the President of Allied, which manufactures a variety of products and comprises several divisions.[5]  The parties then exchanged a series of letters relating to a potential agreement whereby Allied would sell the toy glider.[6]

On January 9, 1993, an agreement was entered into between Allied, Wingers Co., and Plaintiff (the "License Agreement").[7]  Under the License Agreement, Plaintiff granted Allied an exclusive license "thereby permitting and designating Allied to be the sole and exclusive manufacturer, distributors and marketing company of Wingers, and any and all derivative toy products thereof."[8]  In exchange for the exclusive license, Allied agreed to "pay Wingers Co. a

---

[2]Docket No. 15, Ex. 1.

[3]The Court has ordered Wingers Co. also be joined in this litigation.  *See* Docket No. 84.

[4]Docket No. 78, Ex. 1.

[5]Docket No. 78, ¶¶ 2-3.

[6]Docket No. 78, Exs. 2-4.

[7]Docket No. 15, Ex. 2.

[8]*Id*. ¶ 1.

license fee of 5% of the gross receipts on wholesale sales of Wingers, less a credit for returns."[9]

Allied further agreed to

> pay Wingers Co. the sum of $10,000.00 as an advance against royalties to become due in year three of this agreement. The minimum aggregate royalties which shall be paid to Wingers Co. by Allied by the end of year four of this agreement shall be $26,000.00. Any royalties paid by Allied to Wingers Co. in excess of $26,000.00 during years one, two and/or three of this Agreement shall be applied to the minimum royalties due in year four.[10]

Under the License Agreement, Allied agreed to "use its best efforts to manufacture and market Wingers."[11] Allied reserved the right to use the name "Wingers" for the toy glider, but could use another name if Allied believed it would enhance sales.[12] Allied also had the ability to establish the wholesale price for the glider.[13] Plaintiff agreed "to provide sales assistance to Allied to support the product . . . upon Allied's reasonable request."[14]

The License Agreement provides:

> In the event that sales of Wingers are not sufficient to pay the minimum royalties in year four of this Agreement, either party may, upon 90 days written notification to the other, cancel this Agreement, except that Allied shall retain a license granting it the non-exclusive right to continue the manufacture and sale of

---

[9] *Id.* ¶ 4.

[10] *Id.* ¶ 7.

[11] *Id.* ¶ 5; *see also id.* ¶ 10.

[12] *Id.* ¶ 9.

[13] *Id.* ¶ 8.

[14] *Id.* ¶ 11.

Wingers, and other products covered by this Agreement for the duration of the patents, and Allied shall continue to pay royalties as previously set forth herein.[15]

The License Agreement also contains the following provision relating to default:

In the event that either party defaults in the performance of the terms of this Agreement, and in the event said default has not been cured within thirty days after written notification of same to the breaching party, the party who has been damaged may institute an action to enforce the specific terms of this Agreement in an appropriate court of law. . . . However, no default in payments or performance of the terms of this Agreement shall terminate or cancel the assignment of the license granted herein, which can only be terminated when no other remedy exists at law.

Plaintiff originally filed his Complaint on July 29, 2010.[16] Plaintiff filed an Amended Complaint against Defendant Pack on October 12, 2010.[17] In his Amended Complaint, Plaintiff alleges that Defendant is in breach of the License Agreement by failing to pay Plaintiff the royalties due and provide a proper accounting.[18] Plaintiff alleges that he gave notice to Defendant that he was in breach and that the License Agreement is now null and void.[19] Despite this, Defendant continued to sell the toy glider. Plaintiff alleges that, through these actions, Defendant infringed the '639 Patent.

The Court ordered Allied be joined in this matter on November 16, 2011. Defendants Pack and Allied both now move for summary judgment on Plaintiff's infringement claim.

---

[15]*Id.* ¶ 13.

[16]Docket No. 1.

[17]Docket No. 15.

[18]*Id.* ¶ 8.

[19]*Id.* ¶¶ 9-10.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[20]  When reviewing motions for summary judgment, the Court views the evidence in the light most favorable to the non-moving party.[21]  Further, because Plaintiff is proceeding pro se, the Court liberally construes his pleadings.[22]

## III.  DISCUSSION

Defendants Pack and Allied seek summary judgment on Plaintiff's claims.  Defendants argue that: (1) any claim Plaintiff has is limited by the relevant statute of limitations; (2) Plaintiff's claims against Defendant fail because he is not bound by the License Agreement and there is no evidence that he individually offered any patented products for sale; and (3) Plaintiff's infringement claims fail on the merits.  Further, the Court will grant Defendants summary judgment on Plaintiff's unpled contract-based claims.

A.  STATUTE OF LIMITATIONS

Defendants first seek to limit any recovery Plaintiff may have to claims arising in the past six years.  Defendants rely on 35 U.S.C. § 286.  Section 286 provides, in pertinent part, that "no

---

[20]Fed.R.Civ.P. 56(a).

[21]*See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.,* 925 F.2d 1288, 1292 (10th Cir. 1991).

[22]*See Haines v. Kerne*r, 404 U.S. 519, 520 (1972)

recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action."[23]

35 U.S.C. § 286 "is not a statute of limitations barring suit in the usual meaning of the term."[24] Rather, "the only effect § 286 has is to prevent any 'recovery . . . for any infringement committed more than six years prior to the filing of the complaint . . . .'"[25] "In the application of § 286, one starts from the filing of a complaint or counterclaim and counts backward to determine the date before which infringing acts cannot give rise to a right to recover damages."[26]

In this case, Plaintiff filed his original Complaint on July 29, 2010. Therefore, Plaintiff could only recover damages for infringing acts occurring after July 29, 2004, and any recovery for infringing acts before that date is barred by § 286.

B.  CLAIMS AGAINST DEFENDANT PACK INDIVIDUALLY

Plaintiff originally filed his claims only against Defendant Pack individually. The Court has since ordered the joinder of Allied as a Defendant. In his Declaration, Defendant Pack states that he "never sold any toy gliders covered by Plaintiff's patent in my individual capacity, or undertook any activity in my individual capacity that could be construed as infringing upon Plaintiff's patent."[27] Plaintiff has presented no evidence to the contrary.

---

[23] 35 U.S.C. § 286.

[24] *Standard Oil Co. v. Nippon Shokubai Kagaku Kogyo Co., Ltd.*, 754 F.3d 345, 347 (Fed. Cir. 1985).

[25] *Id*. at 348 (quoting 35 U.S.C. § 286).

[26] *Id*. (emphasis omitted).

[27] Docket No. 78, ¶ 11.

Plaintiff's claims against Defendant Pack appear to be based on alleged actions taken by Pack in his role as President of Allied. Plaintiff points to the fact that Defendant Pack signed the License Agreement. However, Defendant Pack signed the agreement in his role as President of Allied.[28] Thus, the mere fact that Defendant Pack's signature is on the agreement does not make him personally liable for the alleged infringement.

Plaintiff also argues for personal liability based on the fact that the License Agreement was signed on the weekend, rather than during the work week. The date the agreement was signed is immaterial to the determination of personal liability. Therefore, this argument fails.

Finally, Plaintiff makes a variety of claims against both Defendant Pack and Defendant Allied concerning the validity and execution of the contract. These claims will be discussed further below.

C.     INFRINGEMENT CLAIMS

   1.     35 U.S.C. § 261

In his deposition and various filings with the Court, Plaintiff has identified 35 U.S.C. § 261 as the statute that he believes Defendants have violated. That provision states:

> Subject to the provisions of this title, patents shall have the attributes of personal property.
> Applications for patent, patents, or any interest therein, shall be assignable in law by an instrument in writing. The applicant, patentee, or his assigns or legal representatives may in like manner grant and convey an exclusive right under his application for patent, or patents, to the whole or any specified part of the United States.
> A certificate of acknowledgment under the hand and official seal of a person authorized to administer oaths within the United States, or, in a foreign

---

[28]Docket No. 15, Ex. 2, at 9.

country, of a diplomatic or consular officer of the United States or an officer authorized to administer oaths whose authority is proved by a certificate of a diplomatic or consular officer of the United States, or apostille of an official designated by a foreign country which, by treaty or convention, accords like effect to apostilles of designated officials in the United States, shall be prima facie evidence of the execution of an assignment, grant or conveyance of a patent or application for patent.
    An assignment, grant or conveyance shall be void as against any subsequent purchaser or mortgagee for a valuable consideration, without notice, unless it is recorded in the Patent and Trademark Office within three months from its date or prior to the date of such subsequent purchase or mortgage.[29]

The Court finds this provision inapplicable to this case. Section 261 applies to assignments. The License Agreement is not an assignment, but is instead an exclusive license. Even if the License Agreement could be considered an assignment, § 261 would still be inapplicable. That provision "is by its terms limited to situations in which the patent owner makes inconsistent assignments, grants, or conveyances to two entities, and the question is whether the later assignee should prevail."[30] Here, there is no evidence of inconsistent assignments and there is no question of which assignee should prevail. Therefore, the Court finds Plaintiff's claims under § 261 fail.

    2.    *Remaining Claims*

Plaintiff brings claims against Defendant for infringing the '639 Patent. Plaintiff, however, entered into the License Agreement with Allied. A license provides "an affirmative defense to a claim of patent infringement."[31]

---

[29] 35 U.S.C. § 261.

[30] *Rhone Poulenc Agro, S.A. v. DeKalb Genetics Corp.*, 284 F.3d 1323, 1327 (Fed. Cir. 2002).

[31] *McCoy v. Mitsuboshi Cutlery, Inc.*, 67 F.3d 917, 920 (Fed. Cir. 1995).

As discussed above, the License Agreement provided Allied with the exclusive rights to make and sell the toy glider covered by the '639 Patent. In exchange for this exclusive license, Allied agreed to pay Plaintiff certain royalties. Plaintiff has alleged that Defendants did not, in fact, pay royalties as required under the License Agreement. However, even if the Court assumes this to be true, by the terms of the License Agreement, this merely converts Allied's license from exclusive to non-exclusive.[32] Thus, even if Allied failed to pay as required, Allied retained a non-exclusive right to continue the manufacture and sale of the toy glider. Therefore, Plaintiff's infringement claims based on Allied's continued manufacture and sale are barred by the License Agreement.

D.   CONTRACT-BASED CLAIMS

Plaintiff has not included any contract claims in his Amended Complaint. However, many of Plaintiff's contentions are based on the License Agreement. In particular, Plaintiff alleges that the License Agreement is invalid and that Defendants have breached the agreement. Though Plaintiff has not included these claims, because he is proceeding pro se, the Court will consider them.

Plaintiff alleges that the License Agreement is invalid. Plaintiff bases this argument on alleged representations by Defendant Pack that Defendant Allied was going to transition away from the manufacture of defense products. These representations were allegedly made by Defendant Pack in conversations with Plaintiff and a letter where Defendant Pack states that

---

[32]Docket No. 15, Ex. 2, ¶¶ 13, 17.

Allied had begun to "diversify away from defense work."[33] There is nothing in either the conversations or the letter, however, that states that Allied would completely stop making defense products and would focus exclusively on toys. Rather, the letter details Allied's history of defense work, stating that Allied "has been and remains" a defense contractor.[34] Further, there is nothing in the License Agreement indicating that Allied would make the toy glider to the exclusion of other defense-related products. Therefore, any reliance by Plaintiff on the alleged statement by Defendant Pack is unreasonable.

Plaintiff further alleges that Defendants have breached the License Agreement by failing to pay him royalties in accordance with the terms of that agreement. The License Agreement requires Allied to pay Wingers Co. a license fee of 5% of the gross receipts on wholesale sales of the toy glider.[35] In his Declaration, Defendant Pack states that "since entering into the Agreement, Allied has sold approximately $800,000.00 worth of toy gliders covered by the Plaintiff's design patent, and accordingly paid Plaintiff over $40,000.00 as required by the Agreement."[36] The Royalty Report submitted by Defendants supports this statement.[37] Plaintiff has provided no evidence to contradict this. Therefore, the Court finds that Defendants are entitled to summary judgment on this claim.

---

[33] Docket No. 78, Ex 3.

[34] *Id.*

[35] Docket No. 15, Ex. 2, ¶ 4.

[36] Docket No. 78, ¶ 10.

[37] *See id.* Ex. 6.

Finally, Plaintiff makes a number of claims that are in direct contravention of the terms of the License Agreement. For example, Plaintiff takes issue with the fact that Allied used a different name when selling the toy glider. However, the License Agreement specifically provides that Allied could use a different name if it believed such name would best enhance sales.[38] Plaintiff also takes issue with Allied's efforts at selling the toy glider. The License Agreement provides that "Allied shall use its best efforts to manufacture and market [the toy glider]."[39] As stated, Allied sold approximately $800,000.00 worth of toy gliders and Plaintiff has provided nothing to suggest that Allied did not use its best efforts. Plaintiff also takes issue with Allied retaining possession over certain tooling and molds. But again, the License Agreement provides for Wingers Co. to "convey and deliver all of its right, title and interest" in these items to Allied.[40] Finally, Plaintiff argues that Allied failed to pay him $26,000.00 per year. This argument, however, misreads the contract. Plaintiff was to be paid "minimum aggregate royalties" of $26,000.00 "by the end of year four" of the License Agreement.[41] The License Agreement further states that "[a]ny royalties paid by Allied to Wingers Co. in excess of $26,000.00 during years one, two and/or three of this Agreement shall be applied to the minimum royalties due in year four."[42] Thus, under the terms of the License Agreement, Allied

---

[38] Docket No. 15, Ex. 2, ¶ 9.

[39] *Id.* ¶ 5.

[40] *Id.* ¶ 6.

[41] *Id.* ¶ 7.

[42] *Id.*

was required to pay a total of $26,000.00 by the end of year four, not every year as argued by Plaintiff. Even if Plaintiff's argument on this point was correct, it would be barred by the applicable statute of limitations. Therefore, the Court finds that each of these contract-based claims fails.

## IV. CONCLUSION

It is therefore

ORDERED that Defendants' Motions for Summary Judgment (Docket No. 76 and 88) are GRANTED.

The Clerk of the Court is directed enter judgment in favor of Defendants and against Plaintiff and close this case forthwith.

DATED   January 27, 2012.

BY THE COURT:

_____
TED STEWART
United States District Judge