IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| STANLEY JOHN KIPPEN,<br><br>        Plaintiff,<br><br><br><br><br>                vs.<br><br><br>STEVEN PACK, PRESIDENT OF ALLIED<br>MATERIALS & EQUIPMENT CO., INC.,<br><br>        Defendant. | MEMORANDUM DECISION AND<br>ORDER DENYING PLAINTIFF'S<br>MOTION AND MEMORANDUM IN<br>SUPPORT TO REOPEN CASE AND<br>SUPPLEMENT COMPLAINT<br><br><br><br>Case No. 1:10-CV-119 TS |

This matter is before the Court on Plaintiff's Post-Remand Motion and Memorandum in Support to Reopen Case and Supplement Complaint.  For the reasons discussed below, the Court will deny Plaintiff's Motion.

I.  BACKGROUND[1]

Plaintiff Stanley John Kippen is the inventor of a toy glider.  Plaintiff was issued Patent

Number 5,078,639 (the "'639 Patent") on January 7, 1992.[2]  Plaintiff formed Wingers Co., a

partnership with Plaintiff as President and Corey Little as Vice President.[3]

On October 13, 1992, Plaintiff sent a letter to Defendant Steven Pack introducing the toy

glider.[4]  Pack is the President of Allied, which manufactures a variety of products and comprises

several divisions.[5]  The parties then exchanged a series of letters relating to a potential agreement

whereby Allied would sell the toy glider.[6]

On January 9, 1993, an agreement was entered into between Allied, Wingers Co., and

Plaintiff (the "License Agreement").[7]  Under the License Agreement, Plaintiff granted Allied an

exclusive license "thereby permitting and designating Allied to be the sole and exclusive

manufacturer, distributors and marketing company of Wingers, and any and all derivative toy

---

[1]The following facts are taken from the Court's previous summary judgment order, as well as the opinion of the Federal Circuit Court of Appeals.  *Kippen v. Pack*, 2012 WL 3125173 (Fed. Cir. Aug. 2, 2012).

[2]Docket No. 15, Ex. 1.

[3]The Court has ordered Wingers Co. also be joined in this litigation.  *See* Docket No. 84.

[4]Docket No. 78, Ex. 1.

[5]Docket No. 78, ¶¶ 2-3.

[6]Docket No. 78, Exs. 2-4.

[7]Docket No. 15, Ex. 2.

products thereof."[8]  In exchange for the exclusive license, Allied agreed to "pay Wingers Co. a

license fee of 5% of the gross receipts on wholesale sales of Wingers, less a credit for returns."[9]

Allied further agreed to

> pay Wingers Co. the sum of $10,000.00 as an advance against royalties to become
> due in year three of this agreement.  The minimum aggregate royalties which shall
> be paid to Wingers Co. by Allied by the end of year four of this agreement shall
> be $26,000.00.  Any royalties paid by Allied to Wingers Co. in excess of
> $26,000.00 during years one, two and/or three of this Agreement shall be applied
> to the minimum royalties due in year four.[10]

Under the License Agreement, Allied agreed to "use its best efforts to manufacture and

market Wingers."[11]  Allied reserved the right to use the name "Wingers" for the toy glider, but

could use another name if Allied believed it would enhance sales.[12]  Allied also had the ability to

establish the wholesale price for the glider.[13]  Plaintiff agreed "to provide sales assistance to

Allied to support the product . . . upon Allied's reasonable request."[14]

The License Agreement provides:

> In the event that sales of Wingers are not sufficient to pay the minimum royalties
> in year four of this Agreement, either party may, upon 90 days written notification
> to the other, cancel this Agreement, except that Allied shall retain a license

---

[8]*Id*. ¶ 1.

[9]*Id*. ¶ 4.

[10]*Id*. ¶ 7.

[11]*Id*. ¶ 5; *see also id*. ¶ 10.

[12]*Id*. ¶ 9.

[13]*Id*. ¶ 8.

[14]*Id*. ¶ 11.

granting it the non-exclusive right to continue the manufacture and sale of Wingers, and other products covered by this Agreement for the duration of the patents, and Allied shall continue to pay royalties as previously set forth herein.[15]

The License Agreement also contains the following provision relating to default:

In the event that either party defaults in the performance of the terms of this Agreement, and in the event said default has not been cured within thirty days after written notification of same to the breaching party, the party who has been damaged may institute an action to enforce the specific terms of this Agreement in an appropriate court of law. . . .  However, no default in payments or performance of the terms of this Agreement shall terminate or cancel the assignment of the license granted herein, which can only be terminated when no other remedy exists at law.

Plaintiff originally filed his Complaint on July 29, 2010.[16]  Plaintiff filed an Amended Complaint against Defendant Pack on October 12, 2010.[17]  In his Amended Complaint, Plaintiff alleged that Defendant was in breach of the License Agreement by failing to pay Plaintiff the royalties due and provide a proper accounting.[18]  Plaintiff alleged that he gave notice to Defendant that he was in breach and that the License Agreement is now null and void.[19]  Despite this, Defendant continued to sell the toy glider.  Plaintiff alleged that, through these actions, Defendant infringed the '639 Patent.

---

[15]*Id*. ¶ 13.

[16]Docket No. 1.

[17]Docket No. 15.

[18]*Id*. ¶ 8.

[19]*Id*. ¶¶ 9-10.

The Court ordered Allied be joined in this matter on November 16, 2011.[20]  Defendants Pack and Allied moved for summary judgment on October 19, 2011.[21]

The Court granted Defendants' motion for summary judgment on January 27, 2012.[22] The Court's ruling contained four primary components.  First, the Court held that 35 U.S.C. § 286 barred any monetary recovery for infringement committed more than six years prior to the filing of the complaint.  Second, the Court granted Defendant Pack summary judgment of no infringement.  Third, the Court granted Defendant Allied judgment of no infringement.  Finally, the Court ruled against Plaintiff on his unplead contract claims.  Judgment was entered against Plaintiff and in favor of Defendants.

Plaintiff appealed the Court's judgement.  The Federal Circuit affirmed in all respects, except the Court's entry of judgment on contract claims that Plaintiff did not plead.  The Federal Circuit vacated that portion of the Court's judgment.  Importantly, however, the Federal Circuit did not remand the matter to this Court for any further action.

The Court received the Federal Circuit's mandate on October 1, 2012.  The mandate was entered on the docket, along with the following entry: "MANDATE of USCA Federal Circuit as to 110 Notice of Appeal, filed by Stanley John Kippen[.]  According to the USCA the judgment

---

[20]Docket No. 84.

[21]Docket No. 76.

[22]Docket No. 106.

of the USDC for the Dist of UT is Affirmed in part, vacated in part.  Judgment included with

mandate: yes.  Case Reopened."[23]

## II.  DISCUSSION

Plaintiff seeks to reopen his case, set a trial date, and supplement his complaint.  The

Court must reject this request.  There is no case remaining to reopen, as all claims that were

presented to this Court have been fully litigated and upheld on appeal.  It is true that one portion

of the Court's summary judgment order was vacated by the Federal Circuit.  However, the

Federal Circuit did not remand this case for any further action.

Plaintiff appears to rely on the language in this Court's docket entry, indicating this case

was reopened.  Plaintiff correctly states that this Court must comply with the mandate of the

Federal Circuit.[24]  However, the language relied upon by Plaintiff is not the mandate of the

Federal Circuit.  Rather, it is a docket entry made by this Court in response to the Federal

Circuit's decision—a docket entry that was made in error.  The Federal Circuit, while vacating a

portion of the Court's ruling, did not remand this matter.  Therefore, there is no further action for

this Court to take and this case will not be reopened.  Should Plaintiff seek to pursue other

claims—claims not before this Court—he must do so by filing a new complaint in the

appropriate forum.  This Court takes no position on whether Plaintiff may bring such claims and

takes no position on the merits of those claims.

---

[23]Docket No. 118.

[24]*See Huffman v. Saul Holdings Ltd. P'ship*, 262 F.3d 1128, 1132 (10th Cir. 2001)
(stating that the mandate rule "provides that a district court must comply strictly with the
mandate rendered by the reviewing court") (quotation marks and citation omitted).

III.  CONCLUSION

It is therefore

ORDERED that Plaintiff's Post-Remand Motion and Memorandum in Support to Reopen

Case and Supplement Complaint (Docket No. 119) is DENIED.

DATED   November 2, 2012.

BY THE COURT:

TED STEWART
United States District Judge